FILED
United States Court of Appeals
Tenth Circuit

December 2, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
———————————————————

K.B., by and through her next friend,
ANGELA BOURELLE,

     Plaintiff - Appellant,

v.

CHRISTOPHER J. PEREZ, in his personal
capacity,

     Defendant - Appellee.

No. 16-1155
(D.C. No. 1:14-CV-03514-WPJ-NYW)
(D. Colo.)

———————————————————

**ORDER AND JUDGMENT**[*]
———————————————————

Before **TYMKOVICH**, Chief Judge, **PHILLIPS** and **McHUGH**, Circuit Judges.
———————————————————

    K.B. appeals the district court's dismissal of her claim under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), against her father's probation officer after she was denied visitation with her father while he was serving part of his term of imprisonment at a halfway house. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

K.B.'s father was convicted in a Florida federal court of distribution of child pornography and sentenced to five years imprisonment followed by ten years of supervised release. He finished his term of imprisonment at a halfway house in Colorado, where K.B. and her sister and mother visited him several times. According to the complaint, the person assigned to become her father's probation officer upon his release from the halfway house directed staff there not to allow K.B. visitation because she was a minor and the Colorado Sex Offender Management Board ("SOMB") guidelines prohibited such contact.

In response to the staff's concerns, K.B.'s father produced an order from the sentencing court pertaining to the conditions of his release. The order requires K.B.'s father to complete an approved sex offender evaluation and treatment program but also states: "Nothing in this approved program . . . can prevent the Defendant from having unsupervised contact with his minor children, inside or outside his home, without additional condition." Aplt. App., Vol. 1 at 47. The order reiterates that otherwise applicable rules under the SOMB guidelines would not apply to K.B's father "to the extent [they] would otherwise prevent contact with his children." *Id.* at 48. Although the order sets forth the conditions that would apply to K.B.'s father upon leaving the halfway house, the staff apparently interpreted it to mean that K.B. was permitted to visit him while he was still there. She was allowed visitation with her father for a few more weeks until, according to the complaint, her father's probation officer directed staff at the halfway house to ignore the court order,

2

explaining that "he was trying to get 'clarification'" on it. *Id.* at 12. K.B. was not allowed visitation for about seven weeks. After that, for reasons not explained in the complaint, she was again able to resume visiting her father. A few months later he began his term of supervised release and moved home with K.B. and her sister and mother. The complaint alleges that the probation officer caused K.B. to suffer "severe emotional distress as a result of [his] arbitrary and illegal actions in unlawfully exerting his authority, when no authority existed[,] which resulted in the termination of her visitation with her Father." *Id.* at 13.

The district court granted the probation officer's motion to dismiss K.B.'s complaint for failure to state a claim, concluding there was no implied damages action under *Bivens* based on a federal official's interference with the constitutional right of familial association and declining to create such a remedy. In the alternative, the court further concluded the probation officer was entitled to qualified immunity because it was not clearly established that applying the SOMB guidelines to K.B.'s father was improper.

## II. Analysis

K.B. first argues that the court erred by concluding that she failed to state a claim under *Bivens* based on the legal theory that her father's probation officer could be held liable for depriving her of her right to familial association with her father. Because we agree that no *Bivens* remedy is available, we do not address K.B.'s argument with respect to the probation officer's qualified immunity.

3

We review de novo the district court's dismissal of a complaint for failure to state a claim. *Shimomura v. Carlson*, 811 F.3d 349, 358 (10th Cir. 2015). "Like the district court, we must determine whether the complaint contains sufficient facts, accepted as true, to state a plausible claim for relief." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). We view the factual allegations in the light most favorable to K.B. as the nonmoving party and draw all reasonable inferences in her favor. *See Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

The right to familial association is a constitutionally-protected liberty interest. *Bryson v. City of Edmond*, 905 F.2d 1386, 1393 (10th Cir. 1990). However, neither the Supreme Court nor this court has authorized an action under *Bivens* to redress a violation of this right. Instead, claims brought under *Bivens* have been dismissed on other grounds, without requiring courts to decide whether to create new *Bivens* remedies. *See, e.g.*, *Reichle v. Howards*, 132 S. Ct. 2088, 2093 n.4 (2012) (finding defendants were entitled to qualified immunity without deciding "whether *Bivens* extends to First Amendment retaliatory arrest claims"); *Pahls v. Thomas*, 718 F.3d 1210, 1226 n.6 (10th Cir. 2013) (assuming "for purposes of this case only" that a *Bivens* remedy was available but observing that "[t]he Supreme Court has been reluctant to extend *Bivens* liability to any new context or new category of defendants" (internal quotation marks omitted)).

To determine whether we should recognize a *Bivens* remedy under the circumstances of this case, we first consider "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial

4

Branch to refrain from providing a new and freestanding remedy in damages."
*Ingram v. Faruque*, 728 F.3d 1239, 1244 (10th Cir. 2013) (internal quotation marks omitted). "Second, even in the absence of an alternative, . . . [we] must make the kind of remedial determination that is appropriate for a common-law tribunal, paying particular heed to any special factors counseling hesitation before authorizing a new kind of federal litigation." *Id.* (ellipsis and internal quotation marks omitted).

With regard to the first inquiry, we note that in the context of this case, K.B.'s right to familial association is coextensive with her father's. K.B. concedes that her father had access to remedial mechanisms for vindicating violations of his right to familial association, such as filing a grievance through the Administrative Remedy Program, *see* 28 C.F.R. § 542.10(a) ("The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her confinement."), or bringing a federal suit for injunctive relief, *see Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001).

Even assuming that such remedies do not provide an adequate basis to vindicate violations of K.B.'s right to familial association, we conclude that authorizing a new kind of federal litigation is not warranted here. First, extending *Bivens* would be contrary to the strong trend of limiting its reach. *See Minneci v. Pollard*, 132 S. Ct. 617, 622 (2012) (noting that the Supreme Court has consistently declined to fashion a *Bivens* remedy since 1980); *see also Malesko*, 534 U.S. at 74 ("The caution toward extending *Bivens* remedies into any new context, a caution consistently and repeatedly recognized for three decades, forecloses such an

5

extension here.").  Moreover, doing so here could lead to unintended, unpredictable, and far-reaching consequences, including inviting a wide range of actions by family members of prisoners.  Should Congress wish to confer the right to bring such actions, it has the authority to do so; but we decline to imply a cause of action of such potentially broad scope under these circumstances.

## III.  Conclusion

The district court's judgment is affirmed.

Entered for the Court

Gregory A. Phillips
Circuit Judge

6